# IN THE UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF ALABAMA, SOUTHERN DIVISION

| | |
|---|---|
| TRAWICK REDDING JR., ) | |
| ) | |
|     **Plaintiff,** ) | |
| ) | |
| v. ) | CIVIL ACTION NO. |
| ) | 1:15-cv-539-MHT |
| DALE COUNTY, et al., ) | |
| ) | |
|     **Defendants.** ) | |

## BRIEF IN SUPPORT OF MOTION TO DISMISS WALLY OLSON AND RON NELSON

COME NOW Defendants Houston County Sheriff Wally Olson and Ron Nelson[1], and submit this Memorandum Brief in Support of their Motion to Dismiss pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. As grounds for so moving, the Defendants state the following:

### INTRODUCTION

This case arises from "the use of a deadly and venomous snake as a means of torture, assault of inmate, cruel and unusual punishment in violation of the 8th amendment and deliberate indifference to medical care in violation of United States Constitution." See Complaint, first unnumbered paragraph. Respectfully,

---

[1] The Complaint appears to contain allegations directed at fictitious parties (i.e. "DALE COUNTY SHERIFF'S DEPUTIES who were involved in the incident…" and "MEDICAL CARE PROVIDER" "whose corporate name" is "unkown"). "As a general matter, fictitious-party pleading is not permitted in federal court." Richardson v. Johnson, 598 F.3d 734, 738 (11th Cir. 2010).

undersigned counsel is not certain regarding the claims that are directed at these Defendants. Plaintiff clearly intends to make a claim against Sheriff Olson and Ron Nelson for "cruel and unusual punishment" through 42 U.S.C. § 1983 (Count One). Count Two appears to be directed to Dale County for "Monell Liability" related to "deliberate indifference to cruel and unusual punishment." However, this Count contains allegations directed at Sheriff Olson and Ron Nelson. Count Three related to "intentional inflection [sic] of emotional distress" appears to be directed to Olson and Nelson. Undersigned counsel assumes that this is intended to be a state law claim. Count Four, related to assault and battery, does not appear to be directed at these Defendants. Undersigned counsel is not able to determine if the wantonness or outrage claims are directed at these Defendants (Counts Five and Six). It appears that Count Seven ("Deliberate Indifference to Psychiatric Care") is directed at Olson and Nelson, although their names are not mentioned in that count.

## STATEMENT OF FACTS

The Complaint avers the following:

1. Sheriff Olson "had responsibility for the creation of correctional policies as well as the housing, safety, and medical treatment of inmates in the Dale County Jail" and that "he is responsible for the management of Dale County's jail facilities" (Compl. ¶ 8.)

2. Olson "has a statutory duty under Alabama law to attend to the medical needs of inmates in Dale County's custody." (Id.)

3. Ron Nelson was a "jailer" "responsible for maintaining the housing, safety, and medical treatments for the inmates in the Dale County Jail" and "was the immediate supervisor for Defendant's [sic] Glenn and Mittelback at all material times." (Id. at ¶ 9).

4. Nelson "had direct knowledge that Defendants Glenn and/or Mittelbach owned snakes." (Id. at ¶ 25).

5. "Jail supervisors and staff" "knew that Defendant Glenn and Mittelbach had obtained 'pythons.'" (Id. at ¶ 30).

6. Sheriff Olson and Ron Nelson were "negligent in the hiring and supervision of Defendant's [sic] Zeneth Glenn and Ryan Mittelbach." (Id. at ¶ 45).

7. Sheriff Olson and Ron Nelson failed to do a "proper background check on the employment of Zeneth Glenn." (Id. at ¶ 46).

8. Olson and "the Chief Deputy and jailers were deliberately indifferent to the risk that the deputies would cause injury to the inmates based upon these tactics." (Id. at ¶ 56).

9. Olson and Nelson knew or should have known that Defendant Glenn would be a danger to inmates. (Id. at ¶ 60).

10. Nelson knew that the snake was in the jail but failed to have it removed until mental anguish was caused to the Plaintiff. (Id. at ¶ 61).

## STANDARD OF REVIEW

The United States Supreme Court has rejected the "no set of facts" standard for determining the sufficiency of a complaint challenged by a Rule 12(b)(6) motion. Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007) (overruling Conley v. Gibson, 355 U.S. 41, 45-46 (1957)).[2] Regarding Conley, the Supreme Court noted that the "no set of facts" language had been essentially taken out of context for fifty years. 550 U.S. at 562-63. On "a focused and literal reading of Conley's 'no set of facts,' a wholly conclusory statement of claim would survive a motion to dismiss whenever the pleadings left open the possibility that a plaintiff might later establish some 'set of [undisclosed] facts' to support recovery." Id. at 562. Instead, the Twombly Court held that

> this famous observation has earned its retirement. The phrase is best forgotten as an incomplete, negative gloss on an accepted pleading standard: *once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint*.

550 U.S. at 563 (emphasis added).

---

[2] See also Dura Pharmaceuticals, Inc. v. Broudo, 544 U.S. 336 (2005); O'Brien v. DiGrazia, 544 F.2d 543, 546, n.3 (C.A. 1 1976) ("[W]hen a plaintiff . . . supplies facts to support his claim, we do not think that Conley imposes a duty on the courts to conjure up unpleaded facts that might turn a frivolous claim of unconstitutional . . . action into a substantial one"); McGregor v. Industrial Excess Landfill, Inc., 856 F.2d 39, 42-43 (C.A. 6 1988) (quoting O'Brien's analysis).

4

What a complaint needs, in the Twombly Court's view, is facts. As a general rule, "a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations . . . ." 550 U.S. at 555. However, "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . ." Id. (citations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level . . . ." Id.

Even under Rule 8(a) there must be a "'statement of circumstances occurrences, and events in support of the claim presented' and . . . not . . . a pleader's 'bare averment that he wants relief and is entitled to it.'" Twombly, 550 U.S. at 555 (citations omitted). "Without some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing only 'fair notice' of the nature of the claim but also 'grounds' on which the claim rests." Id. (citations omitted). Furthermore, "[p]leadings must be something more than an ingenious academic exercise in the conceivable." Marsh v. Butler County, 268 F.3d 1014, 1037 (11th Cir. 2001) (en banc). Unsupported conclusions of law or of mixed law and fact are not sufficient to withstand dismissal under Rule 12(b)(6). Marsh, 268 F.3d at 1036 n.16; see also South Florida Water Mgmt. Dist. v. Montevallo, 84 F.3d 402, 408 n.10 (11th Cir. 1996) (noting "as a general rule, conclusory allegations and unwarranted deductions of fact are not admitted as true in a motion to dismiss").

5

# ARGUMENT

## I. THE PLAINTIFF HAS FAILED TO STATE A CLAIM AGAINST SHERIFF OLSON OR NELSON FOR "DELIBERATE INDIFFERENCE"

As an initial matter, the Complaint is absent any averment that Sheriff Olson or Administrator Nelson personally participated or even knew of the Plaintiff's presence in the jail. Thus, because Sheriff Olson and Administrator Nelson were not personally involved in the events giving rise to this lawsuit, the claims against them must be based on supervisory liability. See Marsh v. Butler County, 268 F.3d 1014, 1035 (11th Cir. 2001) (observing that in the absence of allegations of personal involvement, "[t]he Sheriff's potential liability. . . can be only policymaker liability").

### A. In Ashcroft v. Iqbal the United States Supreme Court eliminated supervisory liability in actions brought pursuant to 42. U.S.C. § 1983.

In Ashcroft v. Iqbal, the Supreme Court concluded that because there is no *respondeat superior* liability under § 1983 or the Bivens doctrine, "the term 'supervisory liability' is a misnomer." 129 S. Ct. 1937, 1949 (2009) (5-4 decision). Without discussing previous circuit court precedent, the Court held that supervisors cannot be found liable based upon their knowledge and acquiescence in their subordinates unconstitutional conduct. Iqbal, 129 S. Ct. at 1949. "Absent vicarious liability, each Government official, his or her title notwithstanding, is only liable for his or her own misconduct." Id. In other words, a supervisory official, like any other governmental official, may only be held liable for his or her own actions resulting in a violation of a plaintiff's federally protected right.

In Iqbal, the plaintiff "argued that, under a theory of 'supervisory liability,' petitioners can be liable for 'knowledge and acquiescence in their subordinates' use of discriminatory criteria to

6

make classification decisions among detainees.'" __ U.S. __, 129 S. Ct. 1937, 1949 (2009). The defendants "conceded [] that they would be subject to supervisory liability if they had actual knowledge of the assertedly discriminatory nature of the classification of suspects as being 'of high interest' and they were deliberately indifferent to that discrimination." Iqbal, 129 S. Ct. at 1956 (Souter, J., dissenting). However, in spite of the defendants' concession, the Court "reject[ed] [plaintiff's] argument" and in doing so stated the following:

> In a § 1983 suit or a Bivens action-where masters do not answer for the torts of their servants-the term "supervisory liability" is a misnomer. Absent vicarious liability, each Government official, his or her title notwithstanding, is only liable for his or her own misconduct. In the context of determining whether there is a violation of clearly established right to overcome qualified immunity, purpose rather than knowledge is required to impose Bivens liability on the subordinate for unconstitutional discrimination; the same holds true for an official charged with violations arising from his or her superintendent responsibilities.

Id. at 1949.

In his dissenting opinion, Justice Souter emphasized the extent of the majorities holding eliminated supervisory liability in § 1983 cases:

> Lest there be any mistake, in these words the majority is not narrowing the scope of supervisory liability; it is eliminating Bivens supervisory liability entirely. The nature of a supervisory liability theory is that the supervisor may be liable, under certain conditions, for the wrongdoing of his subordinates, and it is this very principle that the majority rejects.

Id. at 1957 (Souter, J., dissenting).

While Iqbal's apparent bar on supervisory liability claims may at first appear harsh, its rule is quite simple: liability for supervisors must be based upon their own acts. Moreover, Iqbal merely applies the law as it has been established for some time. The Eleventh Circuit has expressly stated that "[i]t is well established in this Circuit that supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious liability." Cottone v. Jenne, 326 F.3d 1352, 1360 (11th Cir. 2003). Under the current standard,

7

however, supervisory liability claims based upon allegations of policy, procedure, and training issues pervade § 1983 lawsuits.  See Gonzales v. Reno, 325 F.3d, 1228, 1234 (11th Cir. 2003). Policy, procedure, and training claims, such as the one presented in this case, inevitably assume that simply because subordinates behaved badly, a supervisor must have failed to do his job.  Such an assumption is at the heart of the doctrine of vicarious liability.  Thus, even under the current standard, policy, procedure, and training claims should be barred.

> **B.    Alternatively, claims against Olson and Nelson should be dismissed because the Complaint fails to show a plausible supervisory liability claim under the current standard.**

Irrespective of whether Iqbal bars supervisory liability claims, Plaintiff's claims are due to be dismissed under the current standard.  "[S]upervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of *respondeat superior* or vicarious liability."  Cottone, 326 F.3d at 1360.  "Instead, supervisory liability under § 1983 occurs either when the supervisor personally participates in the alleged unconstitutional conduct or when there is a causal connection between the actions of a supervising official and the alleged constitutional deprivation."  Cottone, 326 F.3d at 1360.  A plaintiff can establish a causal relationship between a supervisory official's acts and the acts of his subordinates in the three following ways: (1) the supervisor had notice of a widespread history of abuse which he neglected to correct, Gonzales v. Reno, 325 F.3d, 1228, 1234 (11th Cir. 2003); Cottone, 326 F.3d at 1360; (2) the supervisor implemented a custom or policy that resulted in deliberate indifference to constitutional rights, Gonzales, 325 F.3d at 1234-35; Cottone, 326 F.3d at 1360; or (3) the facts support "the inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so."  Gonzales, 325 F.3d at 1235.

The Complaint fails to allege a history of widespread abuse.  Further, the Complaint contains no allegations that would in any way put Sheriff Olson or Administrator Nelson on notice

8

of any problems with their co-Defendants much less anything specific regarding a pet snake in the Dale County Jail.  Thus, the Complaint contains no averments regarding any prior incidents of abuse or that Sheriff Olson and Administrator Nelson had notice of any pattern of widespread abuse.

Moreover, the Complaint does not allege that either Sheriff Olson or Administrator Nelson directed their subordinates to act unlawfully or knew that they would do so and failed to stop them.

The Complaint fails to allege facts showing that customs or policies were in place that resulted in deliberate indifference to the Plaintiff's constitutional rights.  The Complaint, in a conclusory manner, alleges that deficiencies in policies and procedures.  Conclusory statements, however, are insufficient to state a plausible claim.  Iqbal, 129 S. Ct. 1949-50.

## II.   QUALIFIED IMMUNITY BARS THE CLAIMS AGAINST OLSON AND NELSON IN THEIR INDIVIDUAL CAPACITY

The Plaintiff has sued Olson and Nelson in their individual capacities for these claims.  Qualified immunity bars such claims.  "Qualified immunity offers complete protection for government officials sued in their individual capacities if their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"  Vinyard v. Wilson, 3111 F.3d 1340, 1346 (11th Cir. 2002) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)).  To be eligible for qualified immunity, an officer must demonstrate that he was acting in the scope of his discretionary authority.  O'Rourke v. Hayes, 378 F.3d 1201, 1205 (11th Cir. 2004).  A defendant need only show the acts he undertook "are of a type

9

that fell within the employee's job responsibilities." Crosby v. Monroe County, 394 F.3d 1328, 1332 (11th Cir. 2004).

Once it is determined that a Defendant acted within his discretionary authority, courts use a two-part test to determine whether qualified immunity is proper. In Saucier v. Katz, the Supreme Court directed courts to use the following two-part test to determine whether qualified immunity applies: first, the court determines whether there was a constitutional violation; second, the court determines whether the constitutional right in question was clearly established. Saucier v. Katz, 533 U.S. 194, 201 (2001). The Court has abandoned the rigid order of analysis enunciated in Saucier and stated that courts are no longer required to first determine whether there has been a constitutional violation. Pearson v. Callahan, ___ U.S. ___, No. 07-751, 2009 WL 128768, at *9 (Jan 21, 2009).

> On reconsidering the procedure required in Saucier, we conclude that, while the sequence set forth there is often appropriate, it should no longer be regarded as mandatory. The judges of the district courts and the courts of appeals should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand.

Pearson, 2009 WL 128768, at *9.

"Generally, if case law in factual terms, has not staked out a bright line, qualified immunity almost always protects the defendant." Smith v. Mattox, 127 F.3d 1416, 1419 (11th Cir. 1997).

The Plaintiff has not alleged any personal participation by the Sheriff or Nelson with regard to his claims. He does not even state that Olson or Nelson were present at the time of the events giving rise to the Complaint. Thus, the Plaintiff seeks to hold them liable simply as supervisors.

The allegations that there was a lack of training or supervision that would give rise to a claim of deliberate indifference to a medical condition fail because "[f]actual allegations must be enough to raise a right to relief above the speculative level." Gish, 516 F.3d at 1965. Ultimately, the Complaint rests on conclusory allegations, which are insufficient to state a plausible claim. Iqbal, 129 S. Ct. 1949-50. Because the allegation regarding these claims contains conclusory allegations in an attempt to hold Olson and Nelson vicariously liable, such claims should be dismissed.

### III. ABSOLUTE IMMUNITY BARS THE PLAINTIFF'S STATE-BASED TORT CLAIMS.

"The law is clear in Alabama that sheriffs are constitutionally established executive officers of the State of Alabama." Ex parte Sumter County, 953 So. 2d 1235, 1239 (Ala. 2006). Thus, under Article I, § 14, of the Alabama Constitution, Sheriff Olson has absolute immunity from lawsuits when "acting within the line and scope of [his] employment." Id. (internal citations omitted).

Similarly, Defendants Olson and Nelson are entitled to absolute immunity. Specifically the Alabama Code provides in § 14-6-1, a section discussing Alabama Jails, that:

11

> "The sheriff has the legal custody and charge of the jail in his or her county and all prisoners committed thereto, except in cases otherwise provided by law. The sheriff may employ persons to carry out his or her duty to operate the jail and supervise the inmates housed therein for whose acts he or she is civilly responsible. *Persons so employed by the sheriff shall be acting for and under the direction and supervision of the sheriff and* **shall be entitled to the same immunities and legal protections granted to the sheriff** *under the general laws and the Constitution of Alabama of 1901, as long as such persons are acting within the line and scope of their duties and are acting in compliance with the law.*"

Ala. Code § 14-6-1[3] (emphasis added).

Further, Alabama Code § 36-22-3, a section discussing Alabama Sheriffs, states:

> Persons undertaking such duties for and under the direction and supervision of the sheriff **shall be entitled to the same immunities and legal protections granted to the sheriff** under the general laws and the Constitution of Alabama of 1901, *as long as he or she is acting within the line and scope of his or her duties and is acting in compliance with the law.*"

Ala. Code § 36-22-3[4] (emphasis added).

Alabama Code §§ 14-6-1 and 36-22-3 give jail employees and corrections officers the same legal protections afforded Alabama Sheriffs, including protection by absolute immunity. Thus, Alabama Corrections Officers are immune from liability for actions taken while performing their duties, as long as they comply with

---

[3] On June 14, 2011, Alabama law SB 90 took effect, thus wording Alabama Code § 14-6-1 to specifically give jail employees and corrections officers the same legal protections afforded Alabama Sheriffs, including protection by absolute immunity.

[4] On June 14, 2011, Alabama law SB 90 took effect, thus wording Alabama Code § 36-22-3 to specifically give jail employees and corrections officers the same legal protections afforded Alabama Sheriffs, including protection by absolute immunity.

12

the law. Thus, as Nelson was a correctional officer employed by Sheriff Olson to perform the Sheriff's legal duties at the jail and they did not violate any laws, they are protected by sovereign immunity under Alabama law.

Further, none of the five exceptions to absolute immunity apply in the case at bar. A Sheriff or agent of the sheriff in the execution of his duty can be subject to suit for any of the following reasons:

> (1) to compel him to perform his duties, (2) to compel him to perform ministerial acts, (3) to enjoin him from enforcing unconstitutional laws, (4) to enjoin him from acting in bad faith, fraudulently, beyond his authority, or under mistaken interpretation of the law, or (5) to seek construction of a statute under the Declaratory Judgment Act if he is a necessary party for the construction of the statute.

Parker v. Amerson, 519 So. 2d 442, 443 (Ala. 1987). Dismissing a claim against a sheriff or alter egos of the sheriff is proper in cases where none of the five exceptions apply. See Ex parte Tirey, 977 So. 2d 469, 470 (Ala. 2007). Thus, because none of the exceptions apply to the case at bar, this Court should dismiss all state-based claims against the Defendants Olson and Nelson.

IV. **ASSUMING, ARGUENDO, THAT THIS COURT DETERMINES THAT ABSOLUTE IMMUNITY IS NOT AVAILABLE, OLSON AND NELSON ARE ENTITLED TO STATE AGENT IMMUNITY.**

The Alabama Supreme Court's reformulation of discretionary function immunity provides officials immunity to the sort of claim the Plaintiff might make against Olson and Nelson. Immunity vests where an official is sued for participating in any of the following activities:

   (1) formulating plans, policies, or designs; or

   (2) exercising his or her judgment in the administration of a department or agency of government, including, but not limited to, examples such as:

    (a) making administrative adjudications;
    (b) allocating resources;
    (c) negotiating contracts;
    (d) hiring, firing, transferring, assigning, or supervising personnel; or

   (3) discharging duties imposed on a department or agency by statute, rule, or regulation, insofar as the statute, rule, or regulation prescribes the manner for performing the duties and the State agent performs the duties in that manner; or

   (4) exercising judgment in the enforcement of the criminal laws of the State, including, but not limited to, law-enforcement officers' arresting or attempting to arrest persons; or

   (5) exercising judgment in the discharge of duties imposed by statute, rule, or regulation in releasing prisoners, counseling or releasing persons of unsound mind, or educating students.

Ex parte Cranman, 792 So. 2d 392, 396 n.2 (Ala. 2000).

Nothing in the Complaint would bring the Plaintiff's claims within the exceptions to the granting of discretionary function immunity set out by Cranman. Id.

## **CONCLUSION**

In conclusion, Sheriff Olson and Nelson ask that this Court grant their Motion to Dismiss the claims against them.

Dated this 24th day of August, 2015.

                              Respectfully submitted,

                              /s/ C. Richard Hill, Jr.
                              C. Richard Hill, Jr. (HIL045)

                              *Attorney for Defendants*
                              *Sheriff Olson and Ron Nelson*

OF COUNSEL:
**CAPELL & HOWARD, P.C.**
Post Office Box 2069
150 South Perry Street
Montgomery, Alabama  36102-2069
Telephone:  334/241-8000
Facsimile:   334/323-8888

**CERTIFICATE OF SERVICE**

I hereby certify that on August 24, 2015, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

**Martin E. Weinberg**
Martin Weinberg Law Office
PO Box 154
Shannon, AL  35142
Phone: 205-785-5575
attorneyweinberg@bellsouth.net

**James Randall McNeill**
Webb & Eley, P.C.
PO Box 240909
Montgomery, AL  36124
Phone: 334-262-1850
rmcneill@webbeley.com

/s/ C. Richard Hill, Jr.
OF COUNSEL