IN THE UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF ALABAMA, SOUTHERN DIVISION

| | |
|---|---|
| TRAWICK REDDING JR, ) | |
| ) | |
| Plaintiff, ) | CIVIL ACTION NO: 1:15 CV 539 - MHT |
| v. ) | |
| ) | |
| DALE COUNTY, ET. AL. ) | |
| ) | |
| Defendant ) | |

## RESPONSE TO MOTION TO DISMISS DEFENDANTS WALLY OLSON AND RON NELSON

COMES NOW Plaintiff Trawick Redding Jr. and moves this Court to deny the Motion to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12 (b) (1) and 12(b)(6) as the complaint is factual and can Dale County can and should be held liable. The Defendant fails to demonstrate that they are entitled to a

motion to dismiss as a matter of law, and their motions for dismissal are due to be denied.

## INTRODUCTION

The Defendants motions are due to be denied. The Defendants ignore the critical allegations in the Plaintiff's complaint. Furthermore, it appears that the Defendant's motions to dismiss are, by and large, not 12(b)6 motions but in reality a motion for summary judgment that seek to adjudicate the issues raised in the complaint before the discovery process takes place. At this time it would be improper to evaluate this complaint under the guise for a motion for summary judgment.

Dismissing counts and Defendants before any discovery has commenced and the Plaintiff has had time to amend the complaint would not be in the best interest of justice, nor would it serve the interests of judicial economy. All claims and counts against the Defendants must be considered in the light most favorable to the plaintiff, and while Plaintiff concedes that the facts as currently pled may not be sufficient to properly support each and every claim currently made, Plaintiff avers that through the process of discovery it is anticipated that the patterns, practices, and historical actions of the Defendants will be shown to sufficiently support most, if not all, of the presently pled counts.

Essentially the Defendants spend a large portion of their 12b(6) motion brief making two arguments: first that the complaint does not meet a heightened pleading standard established in the *Twombly* line of cases and secondly that all of the Defendants are entitled to be dismissed because they are protected by layers of immunity. Both of those arguments fail because they can be addressed both at present by the pleadings and their reasonable inferences considered in the light most favorable to the Plaintiff, and in the future should discovery be allowed on those issues. At this time, the Plaintiffs should be given the opportunity to engage in some discovery and remedy any shortcomings in the complaint by amending the pleadings which would be consistent with the heightened pleadings standard required by *Twombly*. The timing of that amendment would be better set after such preliminary discovery as would be necessary to establish or rule out the facts necessary for a heighted pleading standard, but at any time prior to discovery if the Court so deems it necessary the Plaintiff will seek an agreement from opposing counsel for leave to file an amended complaint or, in the alternative, file a motion for same with the Court.

As to the Defendants introduction assigning counts to particular Defendants, the Plaintiff asks that a amended complaint be allowed to clarify some of these inconsistencies or mistakes. In essence, the Plaintiff's are arguing that Defendant's Olson and Nelson be held liable for their supervisory roles in constitutional violations as well as negligent training, hiring and supervision that allowed these violations to occur and but for would have prevented the injuries from being sustained. Furthermore, the Plaintiff alleges that Sheriff Olson is directly responsible for deliberate indifference to medical care as he makes all decisions as to how care is apportioned to the inmates.

**Argument**

## WALLY OLSON AND RON NELSON CAN BE HELD LIABLE FOR CONSTITUTIONAL VIOLATIONS

Defendants' motions are due to be denied. Defendants Sheriff Olson and jailer Ron Nelson ignore the critical allegations in the Plaintiff's complaint. The complaint, h, specifically alleges how Olson and Nelson amongst the correctional officers had specific knowledge or should have had specific knowledge of a python being brought in or smuggled into the jail. Furthermore, as it pertains to specific

allegations of how Olson and Nelson were personally involved in the incident, the Plaintiff argues that a more defined amended complaint after some discovery will provide detail.

The Plaintiffs' liability theory is based on a dual theory of liability in that the Defendants had several missteps or inactions as policymaking officials as well as being able-bodied participants in the constitutional violations that resulted in a python snake being brought into the jail. Bringing a python snake into the jail is clearly in violation of any standard jail operating protocol both internally as well as any national standard for jail procedure whether at the municipal, county, state or federal level. Furthermore, the Defendants are responsible for the deliberate indifference to medical care which is in clear violation of the United States Constitution. The Defendants had adequate knowledge that Mr. Redding was on a number of psychiatric medicines and intake forms and medical charts will show a history of medical problems.. Supervisory defendants Olson and Nelson clearly ignore the law. The Eleventh Circuit, in *Danley v. Allen,* 540 F.3d 1298 (11th Cir.2008) found less-specific allegations stated a supervisory liability claim.

    Furthermore, this is not believed to be an isolated incident. Although other allegations of specific examples as to a python being brought into the jail are not yet readily available the Plaintiff contends that even just basic initial discovery will

support this allegation. Furthermore, there is no denial of the python snake being brought into the jail as two correctional guards were immediately fired or discharged from their duties. That fact has yet to be disputed.

In an abundance of caution, the Plaintiff will be seeking permission to amend the initial complaint once they are provided with some initial disclosures of discovery. As in many jail cases, the Plaintiff is at an extreme disadvantage whereas the Defendant in essence is engaging in the sentiment of the old cliché "wanting its cake and to eat it too". The Defendants provide many of the answers to unclear allegations or allegations that may be vague but contend that they don't have to disclose because they are entitled to immunity. The principle of absolute immunity as described flies in the face of civil rights jurisprudence and would allow them to get off the hook simply because they believe they are immune.

**Defendants Olson and Nelson**

In arguing for absolute immunity, the Defendants ignore critical paragraphs in the plaintiff's complaint. Furthermore, the Defendants are asking the Court on page 6 of their brief to assume that " Sheriff Olson or Administrator Nelson personally participated or even knew of the Plaintiff's presence in the jail. Thus, because Sheriff Olson and Administrator Nelson were not personally involved in the events".  The Plaintiff contends that these inferences cannot be drawn from the

facts as prevented and to the contrary that Sheriff Olson and Jailer Nelson specifically knew of the Plaintiff's presence in the jail. Sheriff Olson, it is assumed, ultimately decided to terminate or discharge Officers Glenn and Mittelbach.

The complaint specifically describes the python even simply being brought into the jail would be torture as defined under violation of State and federal law as well as international treatise in paragraphs 41-44 of the complaint

> 41. It is alleged that the use of snakes to intimidate and control prison and or jail inmates is considered torture and defined as such in the United States Code 18 U.S.C. § 2340 as
>
> 1. "torture" means an act committed by a person acting under the color of law specifically intended to inflict severe physical or mental pain or suffering (other than pain or suffering incidental to lawful sanctions) upon another person within his custody or physical control
>
> 42. Torture as described would be international Human Rights violations and is a violation of the United States Code's prohibition against torture as codified as 18 U.S.C. § 2340 and punishable for up to 20 years.
>
> 43. It is alleged that the use of snakes would be considered improper tactics to control, intimidate, punish, harass or torture inmates under any human rights protocol and shocks the conscience of what is acceptable in any correctional facility.

44. It is alleged that mental torture techniques used to control inmate populations are expressly prohibited and are reminiscent of tactics that have been used internationally in war and considered constitutional violations as well as international human rights violations.

Thus, contrary to the arguments made by defendants, plaintiff has alleged both subjective knowledge of a serious medical need and causation and has made clear this is not a case in which jailers merely deferred to the judgment of a medical professional.

Simply, placing a nurse at a jail or arranging for outside nursing care or medical care as does the Dale County jail does not relieve the correction officers or their supervisors from liability. Correction officers do not retain qualified immunity for ignoring serious medical needs of which they are aware. (See. Howell v. Evans, 922 F.2d 712, 723 (11th Cir. 1991). ("Essentially [defendant Burden] claims that the medical staff's failure to recommend any changes in Howell's care relieved him of the responsibility to seek alternate care. He states that it was his policy to shift responsibility for decisions regarding moving prisoners to his medical staff. These assertions do not absolve Defendant Burden.

The fact that it was his policy to seek proper treatment only when recommended by the medical personnel does not lessen his duty; an official does not insulate his potential liability for deliberately indifferent actions by instituting a policy of indifference. Indeed, it is well established that an official's policy can violate the constitution . . . Burden knew of the urgent need for proper personnel to treat Howell. His apparent decision not to pursue such personnel and allow the

 'budgetary process' to determine whether Howell would receive necessary treatment could be found to be deliberate indifference under *Estelle's* prohibition of delays in obtaining treatment. Accordingly, Burden should have known that his actions and policy could violate the 8th Amendment. He is therefore not entitled to immunity, and his motion for summary judgment was properly denied."(citations omitted); see also *Townsend v. Jefferson County,* 601 F.3d 1152, 1159 (11th Cir. 2010) Deputies can still be held liable even if nurse determines that inmate did not need emergency medical treatment if 1) "situation is so obviously dire" that layman would know "a medical professional had grossly misjudged the [inmate's] condition or 2) if deputies must have known [the nurse] had ignored what she knew to be serious medical need. . . . because for example, "[the nurse] had previously exhibited deliberate indifference in carrying out [her] responsibilities."(citation omitted).

In this particular instance, Olson knew of the urgent need for proper personnel to treat Redding. Shifting the responsibility to anyone else would not absolve the Sheriff's Department or any of their officers from their duty or insulate them from deliberately indifferent actions. The obligation to provide medical care to incarcerated individuals is non- delegable and still liable for any constitutional violations. See *Wilson v. Taylor 733 F.2d 1539, 1545 (11th Cir. 1984)*. As a result of this incident, the Plaintiff continued to suffer mentally which included anxiety, Therefore, the plaintiff has successfully alleged deliberate indifference to serious medical needs in violation of the Constitution.

The Eleventh Circuit, has never required that a plaintiff's complaint contain a detailed description of a plaintiff's proof regarding supervisory liability. "The case law [has] made it clear that an official acts with deliberate indifference when he knows that an inmate is in serious need of **medical** care, but he fails or refuses to obtain **medical** treat- ment for the inmate." *Lancaster v. Monroe County,* 116 F.3d 1419, 1425 (11th Cir.1997). (See also Hodge V. Hale, Ala. Supreme Court 6 So.3d 452, 2008)

Evidence will be presented that the inmate had a significant medical history and needed serious medical attention that she did not receive at all or timely enough and was ignored by Sherriff's Department personnel. The standard for "serious

medical need" is "so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Id at 1243. *Hill v. Dekalb Reg'l Youth Det. Ctr.*, 40 F.3d 1176, 1187 (11th Cir. 1994).  In fact, we believe that not only did other correctional staff believe that the Plaintiff was in serious need but that even other inmates heard screaming from the incident and could testify that Mr. Redding continued to suffer from this incident.

### Distinction from Iqbal

First, the Defendant incorrectly relies on Iqbal to say that supervisory claims are altered. The Defendant has erroneously relied on the Iqbal case to draw the conclusion that absolute immunity exists. This case differentiates from Iqbal mainly in that Attorney General Ashcroft had many layers of staff and procedure isolating him from decision-making. In this particular case, Sheriff Olson is intimately involved in the budgetary process of the jail.  Furthermore, we believe that Sheriff Olson and jailer Nelson had direct knowledge of the incident, other incidents involving Defendants Glenn and Mittelbach and direct knowledge of the Plaintiff Mr. Redding. The Dale County jail is small enough that the Sheriff and the jailer would have direct knowledge and may have in fact been at the facility when the incident occurred.  Furthermore, a cursory internet search of Sheriff Olson and Dale County will show that Sheriff Olson is getting payment for

housing local municipal inmates and is alleged to owe money to the County Commission for housing these inmates and providing them food. This speaks to the inference that Sheriff Olson knows exactly what is going on at the jail or if he didn't he should and would be susceptible to a deliberate indifference claim.

### Under the Current Standard The Plaintiff demonstrates more than a plausible supervisor claim.

Initial discovery will establish that the "supervisory either had a widespread notice of history of abuse, the supervisor implemented a custom or policy that resulted in deliberate indifferent to constitutional rights or the facts support the the inference that pervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so." If we skip ahead to the third way of acknowledging supervisory liability, it should be obvious that a several foot long python snake could not be brought into the correctional facility without some level of planning or meeting of the minds that involved supervisory knowledge. In this case as described above the plaintiff is not only alleging several tort actions, but the fact that simply bringing the Python into the jail was a violation of State, Federal and International Treatise. These

counts cannot be dismissed against the Defendants because they are alleging that they were not present when they occurred.

Furthermore, this lawsuit alleges that two incidents over several hours occurred and therefore it would be completely impractical that a supervisor did not have knowledge of the python being brought into the jail. On its face alone, a python being brought into a jail cannot be classified as "show and tell" or a "prank" but as something that is illegal under color of law and knowledge of its presence or failure to remove it in a timely manner could cause serious problems. It is implausible to assume that supervisors at an inmate facility of any level would not have knowledge or shouldn't have had knowledge of such contraband being brought into the jail and remaining in the jail for several hours as alleged. At this point, the facts alone would dictate that the supervisors failed and allowed a clear constitutional violation to occur.

 Anyone that goes into any correctional facility whether it be guests, vendors, inmates or employees must conform to some sort of security measures and all of the entrances into the facility are videotaped or monitored by some sort of technology. Furthermore, it is widely believed that much of this particular incident has been captured on video and initial discovery will acknowledge much of the incident. The plaintiff asks the court to simply wait until production of the video as

well as other documents that would shed light on the involvement of Sheriff Olson or Deputy Nelson. At this stage in the lawsuit, it is simply too early to make decision regarding absolute immunity. The plaintiff contends at this time that it is essentially being asked to be its own expert in what is considered supervisory duties or mistakes and that alone there are enough facts available to draw those inferences and conclusions.

Although, this may be best left to an amended complaint to expound, the Plaintiff, believes that Defendants Sheriff Olson and Defendant Nelson knew that the Defendants had a propensity to bad behavior as would be evidenced in a proper background check and that specifically Officer Glenn should never have been placed in the Dale County jail based on prior employment law enforcement circumstances.

Respectfully submitted this the 8th day of September 2015

/s Martin Weinberg
Martin E. Weinberg
Attorney for Plaintiff

OF COUNSEL:

MARTIN E. WEINBERG, P.C.
Attorney at Law
Post Office Box 154
Shannon, AL 35142
205-785-5575
attorneyweinberg@bellsouth.net

CERTIFICATE OF SERVICE

I hereby certify that on September 8, 2015, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

C. Richard Hill, Jr.

Capell and Howard, P.C.

150 S. Perry Street

Montgomery, AL. 36104

Phone: 334-241-8000

crh@chlaw.com



James Randall McNeill

Webb and Eley, P.C.

PO Box 240909

Montgomery, AL. 36124

Phone: 334-262-1850

rmcneill@webbeley.com

/s Martin Weinberg

Martin Weinberg

Attorney for Plaintiff