IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| TRAWICK REDDING, JR., ) | |
| ) | |
|     Plaintiff, ) | |
| ) | |
| v. ) | Case No. 1:15-cv-539-MHT-PWG |
| ) | |
| DALE COUNTY, *et al.*, ) | |
| ) | |
|     Defendants. ) | |

## AMENDED REPORT AND RECOMMENDATION

Plaintiff was incarcerated in the Dale County Jail when he alleges he was exposed to a Burmese python by two jailer deputies, and he brings this lawsuit seeking redress for injuries he alleges were caused by that event and subsequent inadequate medical care caused by Defendants. This matter is before the court on the following motions: (1) a motion to dismiss for failure to state a claim upon which relief can be granted filed by Defendant Dale County, Alabama ("the County") (Doc. 12); and (2) a motion to dismiss filed by Defendants Ron Nelson and Wally Olson (Doc. 13). The motions are fully briefed and are taken under submission on the record and without oral argument.

**I.  JURISDICTION**

Subject matter jurisdiction is conferred by 28 U.S.C. § 1331 as to Plaintiff's federal causes of action, and the court may exercise supplemental jurisdiction over

Plaintiff's state law claims pursuant to 28 U.S.C. § 1367. The parties do not contest personal jurisdiction or venue, and there are adequate allegations to support both. *See* 28 U.S.C. § 1391. On August 17, 2015, this matter was referred to the undersigned by U.S. District Judge Myron H. Thompson for disposition or recommendation on all pretrial matters. (Doc. 9). *See also* 28 U.S.C. § 636(b); Rule 72, Fed. R. Civ. P.; *United States v. Raddatz,* 447 U.S. 667 (1980); *Jeffrey S. v. State Board of Education of State of Georgia,* 896 F.2d 507 (11th Cir. 1990).

## II.    BACKGROUND AND STATEMENT OF FACTS[1]

Plaintiff was an inmate at the Dale County Jail and worked in the jail's kitchen as a trustee. (Doc. 36-1 at ¶¶ 10-11). The jail facilities are maintained by Defendant Dale County. (Doc. 36-1 at ¶ 4). Dale County Sheriff Wally Olson is responsible for staffing, supervision, and medical care provided at the jail. (Doc. 36-1 at ¶ 4, 8). Jailer Ron Nelson was employed by Olson as the jailer and was the immediate supervisor of jailer deputies Zeneth Glenn and Ryan Mittelbach (sometimes collectively "the deputies") at all times relevant to this action. (Doc. 36-1 at ¶ 9). On or about August 11, 2013, Plaintiff observed the deputies in possession of a yellow Burmese python,

---

[1] These are the facts for purposes of recommending a ruling on the pending motions to dismiss; they may not be the actual facts and are not based upon evidence in the court's record. They are gleaned exclusively from the allegations in the Complaint.

approximately six to seven feet in length. (Doc. 36-1 at ¶¶ 12-13). Plaintiff told the deputies that he was afraid of snakes and did not wish to be near the snake. (Doc. 36-1 at ¶ 14). When Plaintiff finished his duties in the kitchen, he returned to his dorm and fell asleep in his bunk. (Doc. 36-1 at ¶ 16). Several hours later, the deputies entered the Plaintiff's dorm with the python while Plaintiff was sleeping. (Doc. 36-1 at ¶ 17). Glenn placed the python close to Plaintiff's face, and then screamed, waking Plaintiff from his sleep. (Doc. 36-1 at ¶ 18). Realizing the snake was in his bunk, Plaintiff was startled, screamed, and hit his head on the rail of his bunk. (Doc. 36-1 at ¶ 19). Glenn and Mittlebach were terminated from their employment as a result of this incident. (Doc. 36-1 at ¶¶ 20, 55). Plaintiff alleges that the County has video of the incident. (Doc. 36-1 at ¶ 21). Plaintiff further alleges that employees working in the jail are observed by a shift supervisor upon entering and leaving the jail. (Doc. 36-1 at ¶ 30). Plaintiff further alleges that "Mittlebach and Glenn were therefore observed by a jail supervisor, possibly Nelson, bring the python into the jail several hours before the incident as described occurred." (Doc. 36-1 at ¶ 31).

After the incident, Plaintiff "was sent to a medical facility and saw a therapist at an outside facility where he was prescribed psychiatric medication." (Doc. 36-1 at ¶ 38). Plaintiff remained incarcerated at the jail for over a year after the incident. (Doc. 36-1 at ¶ 39). Plaintiff alleges that he was "paid off or bribed with a job at a

3

car wash in return for not reporting this case to other law enforcement agencies or filing a notice of claim or a lawsuit" and that "Olson was complicit" in this alleged bribery. (Doc. 36-1 at ¶ 40). As a result of the incident, Plaintiff "lived in constant fear, and suffered from depression and post-traumatic stress" and "had trouble sleeping, suffered general anxiety ... and had nightmares and night terrors on a daily basis." (Doc. 36-1 at ¶¶ 39, 41). "The Plaintiff has been treated for injuries including being prescribed sleeping medications, anti-depression medication and anxiety medicines and being under the care of mental health professionals and a licensed psychiatrist." (Doc. 36-1 at ¶ 44). However, Plaintiff claims that he "did not receive proper psychiatric care in the Dale County Jail after this incident and as a result suffered emotionally and physically. It is alleged that the Dale County Jail was motivated by saving money and not insisting that [Plaintiff] receive[] more psychiatric care despite the obvious signs of his anxiety, fear, sleeplessness and fatigue." (Doc. 36-1 at ¶ 45). Plaintiff alleges that in August of 2012, Joshua Glenn McVickers, while an employee working in the Dale County Jail, received sexual favors in exchange for providing contraband and "would manipulate jail cameras in an attempt to keep any wrongdoing from being filmed." (Doc. 36-1 at ¶ 60). Therefore, Plaintiff alleges, "Olson was put on notice that the security precautions at

4

the jail failed to prevent constitutional violations and he failed to take corrective action." (Doc. 36-1 at ¶ 61).

On July 27, 2015, Plaintiff filed a complaint in this court alleging seven counts against the Defendants:

> I - Violations of Eighth Amendment rights alleging cruel and unusual punishment against Defendants Glenn and Mittelbach. (Doc. 36-1 at ¶¶ 61-66).
>
> II - Violations of Eighth Amendment rights alleging "Monell Liability" Indifference to Cruel and Unusual Punishment against Olson, Nelson, and the County. (Doc. 36-1 at ¶¶ 67-82).
>
> III - Intentional Infliction of Emotional Distress against Mittelbach and Glenn under Alabama tort law. (Doc. 36-1 at ¶¶ 83-89).
>
> IV - Assault and Battery against Mittelbach and Glenn under Alabama tort law. (Doc. 36-1 at ¶¶ 90-95).
>
> V - Wantonness against Mittelbach and Glenn under Alabama tort law. (Doc. 36-1 at ¶¶ 96-99).
>
> VI - Outrage against Mittelbach and Glenn under Alabama tort law. (Doc. 36-1 at ¶¶ 100-103).
>
> VII - Violations of Eighth Amendment rights alleging deliberate indifference to psychiatric care against all Defendants. (Doc. 36-1 at ¶¶ 104-111).

**III.   STANDARD OF REVIEW**

A Rule 12(b)(6) motion to dismiss tests the sufficiency of the Complaint against the legal standard set forth in Rule 8: "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

When evaluating a motion to dismiss pursuant to Rule 12(b)(6), the court must take "the factual allegations in the complaint as true and construe them in the light most favorable to the plaintiff." *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Determining whether a complaint states a plausible claim for relief [is] ... a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 663 (alteration in original) (citation omitted).

"[F]acial plausibility" exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). The standard also "calls for enough facts to raise a reasonable expectation that discovery will reveal evidence" of the claim. *Twombly*, 550 U.S. at 556. While the complaint need not set out "detailed factual allegations," it must provide sufficient factual amplification "to raise a right to relief above the speculative level." *Id.* at 555.

"So, when the allegations in a complaint, however true, could not raise a claim of entitlement to relief, 'this basic deficiency should ... be exposed at the point of minimum expenditure of time and money by the parties and the court.'" *Twombly*, 550 U.S. 558 (quoting 5 Wight & Miller § 1216, at 233-34 (quoting in turn *Daves v. Hawaiian Dredging Co.*, 114 F.Supp. 643, 645 (D. Haw. 1953)) (alteration original). "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 556 U.S. at 679 (citing *Twombly*, 550 U.S. at 556).

> "In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."

*Iqbal*, 556 U.S. at 679.

7

**IV.    DISCUSSION - THE COUNTY'S MOTION TO DISMISS**

The County argues that it cannot be held vicariously liable for the tortious acts of Alabama sheriffs. "Alabama counties are not liable under a theory of *respondeat superior* for a sheriff's official acts that are tortious." *McMillian v. Monroe Cty., Ala.*, 520 U.S. 781, 789 (1997); *Ex parte Sumter County*, 953 So. 2d 1235, 1238-39 (Ala. 2006)("Furthermore, counties cannot be held vicariously liable for the actions or omissions of the sheriff or his deputies in operating a county jail. See *King v. Colbert County*, 620 So. 2d 623, 625 (Ala. 1993), and *Parker v. Amerson*, 519 So. 2d 442 (Ala.1987)."). The Plaintiff argues in response that "[t]he Counts against Dale County are for deliberate indifference to medical care. It is simply alleged that by failing to provide medical resources via staffing and services that [Palintiff] suffered once he sustained the injuries from the python incident." (Doc. 26 at 4). However, "any liability of a county resulting from an incident at a county jail must be based on a failure of county officials to provide an adequate facility." *Ex parte Sumter County*, 953 So. 2d at 1239. Plaintiff's Complaint makes no factual allegation regarding the adequacy of the jail facility nor does he allege that any official policy or custom of the County caused his injuries. "[Plaintiff] has not shown that a county policy or custom was the 'moving force' that caused the alleged constitutional violations in this case as [he] must to establish the county's § 1983 liability. See *Young v. City of*

*Augusta, Ga.*, 59 F.3d 1160, 1171 (11th Cir. 1995)." *McElligott v. Foley*, 182 F.3d 1248, 1259 (11th Cir. 1999).

Count Two of Plaintiff's Complaint seeks relief directly against Mittelbach, Glenn, and the County based on the holding in *Monell v. New York City Dept. of Soc. Serv.*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Plaintiff alleges that the Defendants maintained an "unwritten 'custom' or 'policy'" allowing deputy sheriff's to torture inmates. However, Plaintiff's claim for "*Monell* Liability" is inapposite to the nature of Alabama's county jails:

> "Alabama counties have no duties with respect to the daily operation of the county jails and no authority to dictate how the jails are run. *Monell*, which firmly established that local governments could be sued under § 1983, is 'a case about responsibility.' *Pembaur*, 475 U.S. at 478, 106 S.Ct. at 1297 (discussing *Monell v. New York City Dept. of Soc. Serv.*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978)). The County cannot be liable for the harms that befall jail inmates due to improper operation of the jail or negligent supervision of its inmates because the County has no responsibility in that area."

*Turquitt v. Jefferson Cty., Ala.*, 137 F.3d 1285, 1291 (11th Cir. 1998). See also *Tittle v. Jefferson Cty. Comm'n*, 10 F.3d 1535, 1540 (11th Cir. 1994)("Counties may be liable for violations of constitutional rights only when such violations occur as a result of an official county policy."). The County had no authority to dictate how the jail was run, and neither the County, Glenn, or Mittelbach created an "official policy" that resulted in Plaintiff's alleged injuries.

9

For the foregoing reasons, the motion to dismiss the Plaintiff's claims under *Monell* liability are due to be granted on the merits in the Defendants' favor.

## V.     DISCUSSION - OLSON AND NELSON'S MOTION TO DISMISS

### A.  Failure to state a claim for deliberate indifference

Olson and Nelson argue that "the Complaint is absent any averment that Sheriff Olson or Administrator Nelson personally participated or even knew of the Plaintiff's presence in the jail. Thus, because Sheriff Olson and Administrator Nelson were not personally involved in the events giving rise to this lawsuit, the claims against them must be based on supervisory liability." (Doc. 15 at 6). "In a § 1983 suit or a *Bivens* action—where masters do not answer for the torts of their servants—the term 'supervisory liability' is a misnomer. Absent vicarious liability, each Government official, his or her title notwithstanding, is only liable for his or her own misconduct." *Iqbal*, 556 U.S. at 677.  Further, "[i]t is well established in [the Eleventh] Circuit that supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of *respondeat superior* or vicarious liability." *Hartley v. Parnell*, 193 F.3d 1263, 1269 (11th Cir. 1999) (internal quotation marks and citation omitted)." *Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003).  Plaintiff fails to allege any personal participation by Olson or Nelson in the August 11, 2013, "snake

10

incident."[2]  Therefore, Plaintiff's constitutional claims brought via § 1983 arising from the original "snake incident" against Olson and Nelson based on supervisory liability are due to be dismissed.[3]

### B - Qualified Immunity

As to Plaintiff's remaining constitutional claim alleging deliberate indifference to psychiatric medical treatment against Olson and Nelson, they argue that qualified immunity as government officials bars Plaintiff's claims brought against them in their individual capacities. (Doc. 15 at 9). Qualified immunity limits suit against state officials in their individual capacities. A plaintiff alleging a constitutional violation under § 1983 can only overcome qualified immunity if "(1) the defendant violated a constitutional right, and (2) this right was clearly established at the time of the

---

[2]Plaintiff's additional factual allegations in his amended complaint fail to offer any further evidence plausibly demonstrating that Olson or Nelson participating in the "snake incident."  Even assuming, as Plaintiff pleads, that Nelson "possibly" observed Mittelbach and Glenn bringing the python into the jail (Doc. 36-1 at ¶ 31) and that Olson was put on notice that the security precautions at the jail failed to prevent constitutional violations because of a single prior incident with an employee (Doc. 36-1 at ¶ 61), Plaintiff fails to allege any facts which would make Olson or Nelson vicariously liable under § 1983 for the acts of Mittelbach and Glenn.

[3]Plaintiff cites a single case, *Danley v. Allen*, 540 F.3d 1298 (11th Cir. 2008), for the proposition that Olson and Nelson could, under certain circumstances, be subject to supervisory liability. However, the holding in *Danley* on which Plaintiff would reply was overruled by *Iqbal*.

alleged violation." *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1264 (11th Cir. 2004).

> "[T]his court has acknowledged that the deliberate indifference standard also applies to inmates' psychiatric or mental health needs. *Greason v. Kemp*, 891 F.2d 829, 834 (11th Cir.1990); *Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir.1989) (citing *Rogers v. Evans*, 792 F.2d 1052, 1058 (11th Cir. 1986)). It is thus clear that prisoners are guaranteed the right under the eighth amendment to be free from deliberate indifference by correctional institutions to their serious physical or psychological needs...
>
> "Medical treatment violates the eighth amendment only when it is 'so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness.' *Rogers*, 792 F.2d at 1058 (citation omitted). Mere incidents of negligence or malpractice do not rise to the level of constitutional violations. See *Estelle* [*v. Gamble*], 429 U.S. [97,] 106, 97 S.Ct. [285,] 292 [1976)]('Medical malpractice does not become a constitutional violation merely because the victim is a prisoner.'); *Mandel*, 888 F.2d at 787–88 (mere negligence or medical malpractice 'not sufficient' to constitute deliberate indifference); *Waldrop*, 871 F.2d at 1033 (mere medical malpractice does not constitute deliberate indifference). Nor does a simple difference in medical opinion between the prison's medical staff and the inmate as to the latter's diagnosis or course of treatment support a claim of cruel and unusual punishment. See *Waldrop*, 871 F.2d at 1033 (citing *Bowring v. Godwin*, 551 F.2d 44, 48 (4th Cir.1977)).
>
> "In institutional level challenges to prison health care such as this one, systemic deficiencies can provide the basis for a finding of deliberate indifference. *Rogers*, 792 F.2d at 1058. Deliberate indifference to inmates' health needs may be shown, for example, by proving that there are 'such systemic and gross deficiencies in staffing, facilities, equipment, or procedures that the inmate population is effectively denied access to adequate medical care.' *Ramos v. Lamm*, 639 F.2d 559, 575 (10th Cir. 1980), cert. denied, 450 U.S. 1041, 101

> S.Ct. 1759, 68 L.Ed.2d 239 (1981). Moreover, although incidents of malpractice standing alone will not support a claim of eighth amendment violation, '[a] series of incidents closely related in time may disclose a pattern of conduct amounting to deliberate indifference.' *Rogers*, 792 F.2d at 1058–59 (citing *Bishop v. Stoneman*, 508 F.2d 1224 (2d Cir. 1974)). 'Repeated examples of delayed or denied medical care may indicate a deliberate indifference by prison authorities to the suffering that results.' *Id*. at 1059 (citing *Todaro v. Ward*, 565 F.2d 48, 52 (2d Cir. 1977)); see also *Ramos*, 639 F.2d at 575 ('In class actions challenging the entire system of health care, deliberate indifference to inmates' health needs may be shown by proving repeated examples of negligent acts which disclose a pattern of conduct by the prison medical staff.')."

*Harris v. Thigpen*, 941 F.2d 1495, 1504-06 (11th Cir. 1991)(footnotes omitted).

> "Although 'courts hesitate to find an Eighth Amendment violation' when an inmate 'has received medical care,' this Court has cautioned that such hesitation 'does not mean ... that the course of ... treatment of a prison inmate's medical ... problems can never manifest' deliberate indifference. *Waldrop v. Evans*, 871 F.2d 1030, 1035 (11th Cir.1989). *Carswell v. Bay Cnty.*, 854 F.2d 454, 457 (11th Cir. 1988); see also *Harris v. Thigpen*, 941 F.2d 1495, 1505 (11th Cir. 1991) (noting that medical treatment rises to the level of a constitutional violation only when it is 'so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness' (quotation omitted))."

*Kruse v. Williams*, 592 F. App'x 848, 858 (11th Cir. 2014).

In the instant case, Plaintiff alleged deliberate indifference to his psychological and medical needs, but fails to provide sufficient factual allegations to support his claim. "Plaintiff concedes that the facts as currently pled may not be sufficient to properly support each and every claim currently made" and suggests that he "should

13

be given the opportunity to engage in some discovery and remedy any shortcomings in the complaint by amending the pleadings which would be consistent with the heightened pleadings standard required by *Twombly*." (Doc. 27 at 2-3). Plaintiff was granted leave to amend his Complaint. (Doc. 44).  However, the only additional factual allegation presented by Plaintiff in his Amended Complaint in support of his claim of deliberate indifference to his psychiatric care is that Plaintiff was "bribed or paid off" by some unnamed party to not disclose the incident "to anyone including medical staff..." (Doc. 36-1 at ¶ 106) and that "Olson was complicit" in this alleged bribery. (Doc. 36-1 at ¶ 40).  Nevertheless, Plaintiff states that he is "arguing that Defendants Olson and Nelson be held liable for their supervisory roles in constitutional violations as well as negligent training, hiring and supervision that allowed these violations to occur and but for would have prevented the injuries from being sustained. Furthermore, the Plaintiff alleges that Sheriff Olson is directly responsible for deliberate indifference to medical care as he makes all decisions as to how care is apportioned to the inmates." (Id.). Plaintiff acknowledges that he "saw a therapist at an outside facility" and received treatment, therapy, and medication, but fails to offer any factual allegations to support his conclusory claim that the care he was provided was not "proper." (Doc. 1 at ¶¶ 38, 44).  Plaintiff does not allege malpractice, systemic and gross deficiencies in the provision of care, a series of

related incidents or deficiencies, or that his care was delayed or denied. Rather, Plaintiff acknowledges that he received treatment, therapy, and medication. His bare factual allegation is that he did not receive "proper" psychiatric treatment and that the Dale County jail failed to "insist[] that [Plaintiff] receieve[] more psychiatric care..." in an effort to save money. (Doc. 36-1 at ¶ 45). Plaintiff's claim of deliberate indifference is conclusory and lacks sufficient factual allegations to support a plausible claim that his Eighth Amendment rights were violated by Olson or Nelson. See *Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989)("[A] simple difference in medical opinion" does not constitute deliberate indifference.). Because Plaintiff fails to demonstrate a plausible claim of deliberate indifference, Olson and Nelson's motion to dismiss Plaintiff's claim for deliberate indifference is due to be granted in their favor.

**C - Immunity as to state law claims**

Olson and Nelson next argue that they are entitled to absolute immunity to Plaintiff's state law claims. Olson is the Dale County Sheriff.

> "[A] sheriff is an employee of the state, rather than a county, based on the following constitutional provision: 'The executive department shall consist of a governor ... and a sheriff for each county.' Article V, § 112, Alabama Constitution of 1901. As executive officers, sheriffs have sovereign immunity under Article I, § 14, of the Alabama Constitution, which reads: '[T]he State of Alabama shall never be made a defendant

15

in any court of law or equity.' The only exceptions to such immunity are for actions brought against a sheriff:

> "'(1) to compel him to perform his duties, (2) to compel him to perform ministerial acts, (3) to enjoin him from enforcing unconstitutional laws, (4) to enjoin him from acting in bad faith, fraudulently, beyond his authority, or under mistaken interpretation of the law, or (5) to seek construction of a statute under the Declaratory Judgment Act if he is a necessary party for the construction of the Statute.'

"519 So. 2d at 443. None of those exceptions applies here."

*Hereford v. Jefferson Cty.*, 586 So. 2d 209, 210 (Ala. 1991). As in *Hereford*, none of the exceptions apply in this case, and Olson is entitled to sovereign immunity from Plaintiff's state law claims.

Plaintiff's Complaint names Nelson in his capacity as a "jailer" employed by the Dale County Sheriff. (Doc. 36-1 at ¶ 9). In 2009, the Alabama Supreme Court ruled that jailers employed by a sheriff were not entitled to the same § 14 sovereign immunity afforded to deputy sheriffs. See *Ex parte Shelley*, 53 So. 3d 887, 897 (Ala. 2009)("The doctrine of State immunity under § 14 of the Alabama Constitution, insofar as it operates to provide absolute immunity to certain State actors with respect to suits against them in their individual capacity for money damages, is a doctrine that is applicable to constitutional officers. ... [A] position as a jailer simply does not meet

this requirement."). Following that ruling, the Alabama legislature amended § 14-6-1, Ala. Code 1975, to provide as follows:

> "The sheriff has the legal custody and charge of the jail in his or her county and all prisoners committed thereto, except in cases otherwise provided by law. The sheriff may employ persons to carry out his or her duty to operate the jail and supervise the inmates housed therein for whose acts he or she is civilly responsible. Persons so employed by the sheriff shall be acting for and under the direction and supervision of the sheriff and shall be entitled to the same immunities and legal protections granted to the sheriff under the general laws and the Constitution of Alabama of 1901, as long as such persons are acting within the line and scope of their duties and are acting in compliance with the law."

In this case, Plaintiff's Complaint alleges that Nelson was acting as a jailer under Olson's supervision and was also acting in the line and scope of his employment at all times relevant to Plaintiff's claims. Based upon a straightforward application of § 14–6–1, Nelson is absolutely immune from Plaintiff's state law claims.

For the foregoing reasons, Olson and Nelson's motion to dismiss Plaintiff's state law claims against them is due to be granted in their favor.

## V.   CONCLUSION AND RECOMMENDATION

Accordingly, for the reasons as stated, it is the **RECOMMENDATION** of the Magistrate Judge that Defendant Dale County's motion to dismiss (Doc. 12) is due to be granted in Dale County's favor. It is the further **RECOMMENDATION** of the

17

Magistrate Judge that Defendants Olson and Nelson's motion to dismiss (Doc. 13) is due to be **GRANTED** in their favor.

It is **ORDERED** that the parties shall file any objections to the said Recommendation on or before **March 28, 2016.** Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation to which the party objects. Frivolous, conclusive or general objections will not be considered by the District Court. The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and recommendations in the Magistrate Judge's report shall bar the party from a *de novo* determination by the District Court of issues covered in the report and shall bar the party from attacking on appeal factual findings in the report accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982). *See Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982).

**DONE** and **ORDERED** this 14th day of March, 2016.

                                                /s/ Paul W. Greene
                                                United States Magistrate Judge